FREDERICKA HOMBERG WICKER, Judge.
| ¿Plaintiff, Jane Jefferson, brings this appeal from a judgment of the trial court on traversals in an action for partition of community property. We affirm the judgment.
This matter began with the filing of a partition of community property by Anthony Jefferson. Mr. Jefferson filed a sworn detailed descriptive list in which he listed only one community asset, the family home. Mrs. Jefferson filed an amended *193 sworn descriptive list to which she added Mr. Jefferson’s retirement accounts as an asset of the community. Mrs. Jefferson also listed a number of debts allegedly owed to her by Mr. Jefferson. These debts total $53,269.00.and are derived from uninsured fire damage at the family home. A second amended descriptive list, which itemized additional losses in the fire, increased the debt for the damage to $71,424.71.
After a hearing on the merits, the trial court rendered a judgment on traversals in which it valued the family home at $76,000.00, ordered that all claims | sto retirement benefits are to be divided according to the Sims[1] formula, and awarded reimbursement in the amount of $34,242.45 to Mrs. Jefferson for expenses incurred. The trial judge gave written reasons for judgment in which he discusses each of Mrs. Jefferson’s claims for reimbursement. Ultimately, the trial court concluded that Mrs. Jefferson was entitled to reimbursement as follows:
1) J.D. Jefferson Enterprises $15,040.00
2) Material Costs 6,754.21
3) Bernard Remodeling 12,000.00
4) William Gilbert Workshop 107.42
5) Rev. Eugene Turner 300.00
6) Landry Lumber 42.82
TOTAL ■ $34,242.45
It is from that judgment that Mrs. Jefferson appeals. Mr. Jefferson also filed a motion for appeal, which he subsequently withdrew. Mr. Jefferson has filed an answer to the appeal in this Court.
Mrs. Jefferson’s claims stem from a consent judgment signed by the parties in 1995, which provided that Mr. Jefferson was to maintain homeowners’ insurance on the family home, and automobile insurance on Mrs. Jefferson’s vehicle. Although that judgment is not in the record before us, Mr. Jefferson admitted at trial that he was required to maintain both insurances.[2] He further testified that he did so for two or three years, but did not continue the coverage. However, Mr. Jefferson did not produce any documents to substantiate those facts, and could not recall the cost of either types of insurance. Mr. Jefferson testified that he knew that the home caught fire, destroying the kitchen and dining room, and causing smoke and water damage to other portions of the home. He further testified that he knew that the home was repaired, although he did not pay for any |4portion of that cost. Mr. Jefferson stated that he did not pay for the replacement of any of the contents lost in the fire or arrange for alternative living expenses for Mrs. Jefferson after the fire.
John Pollard, Mrs. Jefferson’s brother and a licensed contractor, testified that Mrs. Jefferson’s home consisted of a trailer around which a house was built. The fire, which started in the kitchen, destroyed the side and top of the trailer as well as all the rafters coming across the other side to the new addition. The back side of the house also burned.
Mr. Pollard stated that the kitchen was totally destroyed, requiring the removal and replacement of all cabinets, appliances and flooring. There was minimal damage in the living room, which only required repainting. The back bedroom and bathroom and the hallway connecting them *194 were completely destroyed. Rafters, roof and walls all had to be replaced.
Mr. Pollard testified that because his sister had no insurance to cover the cost of the repairs, he did the job for cost. The original estimate for the work was $15,040.00. However, Mr. Pollard stated that he only received about $11,000.00. Mr. Pollard did not have actual receipts for materials purchased for the house, but he stated that the actual cost was more than $15,000.00. He explained that, because it was his sister, he worked on her home after coming home from his regular employment. He also put in some of his own money and enlisted friends to donate their time to help him finish the repairs.
Mrs. Jefferson testified that her home was heavily damaged in a fire that started in the kitchen when her seventeen-year-old son left a hamburger frying on the stove and went into another part of the house. She stated that she had no fire insurance coverage on her home because her former husband did not maintain the coverage as ordered by a prior judgment of the court. Because she had no money 1 sto repair the damage, she turned to her brother, a licensed and bonded contractor for help. He repaired most of the damage; however, some damage remained to be addressed. She hired Bernard Remolding to do some of the-work, and Reverend Eugene Turner to do the electrical work. Mrs. Jefferson also provided the court with evidence that she purchased additional materials amounting to $6,754.21. She has not yet replaced the air conditioner lost in the fire because of budget constraints. The estimated cost of that repair is $4,898.00. Mrs. Jefferson also lost household goods, clothes and personal items in the fire.
In brief to this court, Mrs. Jefferson argues that the trial court erred in denying various claims she made. Specifically, Mrs. Jefferson asserts the trial court erred in denying her claim for diminished value of the home, for reimbursement for auto insurance and homeowners’ insurance premiums paid, for loss of movables, alternate living expenses, and for personal items and clothing. Additionally, Mrs. Jefferson argues the trial court erred in reducing her recovery for out of pocket repair costs by failing to assign the reimbursement expense as a sole obligation of Mr. Jefferson.
Mr. Jefferson argues that Mr. Pollard should not have been accepted as an expert by the court, and further, that the accounting presented at trial is insufficient to support the award regarding the repair work done by Mr. Pollard. Mr. Jefferson also asserts the documentation supporting the other claims including Bernard Remolding and additional materials is insufficient. Finally, Mr. Jefferson avers that the trial court committed legal error in holding him responsible for the fire, since it was caused by a seventeen-year-old in the custody of Mrs. Jefferson.
Because Mr. Jefferson’s assignment of error that he should not be held liable for any damages related to the fire must be considered before a review of the damages awarded, we will review that argument first. The basis for Mr. | fiJefferson’s argument is that the fire was caused by the couple’s teenage son. Mr. Jefferson argues that, because Mrs. Jefferson has custody of the minor, she is legally responsible for his actions.
Mr. Jefferson’s argument mischar-acterized the reason for the finding of his liability. His liability is based on his failure to comply with the consent judgment to provide insurance, not for causing the fire. He is now responsible, not vicariously because of the actions of his minor son in causing the fire, but for his own actions in allowing the insurance to lapse. This argument is without merit.
*195 Having found Mr. Jefferson is liable for the uninsured losses, we will review Mrs. Jefferson’s claims for reimbursement.
The trial court gave extensive and specific reasons for judgment. As to Mrs. Jefferson’s claim for diminished value of the home, Mr. Jefferson valued the home at $80,000.00, while Mrs. Jefferson diminished the value to $72,000.00. The trial court considered the value placed on the home by both parties, and ultimately valued the home between the amounts to allow for some decrease in value. Given the trial court’s wide discretion in these matters, we do not find an abuse of discretion.
The trial court correctly found that Mrs. Jefferson’s claims for reimbursement for homeowners’ and automobile premiums should be denied. Mr. Jefferson admitted it was his legal responsibility to maintain these policies and he did not do so. However, because Mrs. Jefferson offered no proof that she paid the premiums, she is not entitled to reimbursement.
In considering Mrs. Jefferson’s claims regarding additional living expense during the home repairs and loss of private property in the fire, the trial court noted that “no proof whatsoever was adduced to show the values” of these claims. It then denied those claims.
|7We recognize that it is undisputed that Mr. Jefferson took on the responsibility to maintain homeowners’ insurance on the community home by consent judgment. It is also undisputed that he did not meet that obligation. Nevertheless, the claim for Mrs. Jefferson’s additional losses sound in tort and we find no error in the denial of those claims by the trial court on a traversal proceeding.
Mrs. Jefferson also maintains in her last assignment of error that the trial court erred in reducing her recovery for repair costs by failing to assign the reimbursement expense as a .sole obligation of Mr. Jefferson. Mrs. Jefferson does not argue this assignment other than to state that the trial court ruled the repairs were a debt of the community. We find no such ruling or reduction of the reimbursement in either the judgment or reasons for judgment. Thus, that assignment is not applicable to the judgment before us and will not be considered.
Mr. Jefferson argues that the trial court erred in allowing Mrs. Jefferson to proceed In Forma Pauperis. The record contains a Motion for Waiver of Costs of Appeal filed by Mrs. Jefferson in which she asserts that she has been allowed to proceed in the trial court In Forma Pau-peris, and she pleads for that status on appeal. That motion was granted by the trial court on January 9# 2006. There is no indication that Mr. Jefferson has traversed the request for that status at any point in the trial court. Since this matter has been pending in the trial court for over two years, affording Mr. Jefferson an opportunity to traverse the In Forma Pauperis status, we are not inclined to remand this matter for a hearing on the status. See: Guillory v. Nicklos Oil & Gas Co., 315 So.2d 914 (La.App. 3 Cir.1975).
Mr. Jefferson argues the trial court erred in accepting the testimony of Mr. Pollard as expert testimony. At the hearing Mr. Pollard was accepted as an expert in residential construction. A trial judge is vested with wide discretion in | sdetermining the competence of an expert witness. Competence of an expert witness is a question of fact to- be determined within the sound discretion of the trial judge. Rulings on the qualifications of expert witnesses will not be disturbed in the absence of manifest error. State v. Higgins, 03-1980 (La.4/1/05), 898 So.2d *196 1219; cert. denied, Higgins v. Louisiana, — U.S. -, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005).
At the hearing, Mr. Pollard recited his experience in the building trades and explained that he has been involved in both residential and commercial building for twenty-seven years. He is a member of the pipe fitters union and is a supervisor for Hy-Teeh Services, a licensed contractor. His job is to estimate the costs of new construction or renovations on potential jobs. He is also a licensed plumber. The trial court afforded Mr. Jefferson’s counsel the opportunity to cross-examine Mr. Pollard on tender, and ultimately Mr. Pollard was accepted by the court as an expert in residential restoration construction. Given the circumstances, we do not find the trial court abused it vast discretion in accepting Mr. Pollard’s expert testimony. This assignment is without merit.
Mr. Jefferson argues that the trial court lacked sufficient evidence to support the award for reimbursement to Mr. Pollard and Bernard Remodeling. We disagree. The testimony and exhibits presented by Mrs. Jefferson, none of which were disputed by any evidence from Mr. Jefferson, are sufficient to support the trial court’s decision.
For the foregoing reasons the trial court judgment is affirmed.

AFFIRMED.

. Sims v. Sims, 358 So.2d 919 (La.1978)

. The consent judgment is attached to Mrs. Jefferson’s brief to this court. The appellate briefs of parties and attachments thereto are not a part of the record on appeal, and this court has no authority to consider on appeal facts referred to therein if those facts are not in the record. Distefano v. B & P Const., Inc., 04-25 (La.App. 5 Cir. 5/26/04) 874 So.2d 407; writ denied, 04-1735 (La.10/15/04) 883 So.2d 1058. However, we find Mr. Jefferson's testimony to his obligation under the consent judgment constitutes a judicial confession. La. C.C. art. 1853.